UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| COREY LARON HOSKINS, JR., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:19-CV-2859 AGF |
|  | ) |  |
| DOUG CHARLES MILLET, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court upon the application of plaintiff Corey Laron Hoskins, Jr. for leave to commence this action without payment of the required filing fee. ECF No. 2. Upon consideration of the financial information provided with the application, the Court finds that plaintiff is financially unable to pay the filing fee and the motion will be granted. *See* 28 U.S.C. § 1915(a)(1). However, for the reasons discussed below, this case will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without prepayment of the filing fee, or *in forma pauperis*, if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a *pro se* complaint under 28 U.S.C. § 1915, the Court accepts the well-pled facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the *pro se* plaintiff that assumed facts that had not been pleaded).

**The Complaint and Supplements**

*Pro se* plaintiff brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, against her former supervisor, Doug Millet. Plaintiff was employed under defendant with Amazon as a 'Seasonal Whole Foods Shopper.' ECF No. 1 at 9. Plaintiff describes herself as "transgender," explaining that when she began her employment with Amazon in May 2019, she was "transitioning from male to female." *Id.*; ECF No. 4 at 1. Plaintiff states that the correct pronouns for her are "she, her,

and hers." *Id.* Plaintiff alleges that she is facing discrimination in the workplace, retaliation, and sexual harassment as a transgender person. ECF No. 1 at 9.

Plaintiff states that on her first day of employment, she went into an employee-only section of the store where her on-site supervisor, defendant Doug Millet, looked at her strangely and "was very rude in his approach." ECF No. 4 at 1. Once defendant realized plaintiff was a new hire, he directed her where to go "in an irritated manner." *Id.* Later, when it was plaintiff's turn to introduce herself to the group of new employees, plaintiff alleges that defendant Millet had "lust in his eyes," and he "look[ed] down at her breasts because he noticed that she had them." *Id.*

Plaintiff admits that "in the beginning" she "struggled with her pick rate" – which is the speed at which she completes a shopping order. ECF No. 4 at 1. However, she also complains that in those beginning weeks of her employment, defendant "gave her a hard time about her pick rate," belittled her in front of other employees, and showed favoritism to other employees. She states that defendant insisted that other employees show her how to do things and that defendant bragged about giving SWAG incentive items to other employees. *Id.* By the time of her complaint filing in October 2019, plaintiff alleges that defendant "doesn't follow up with [her] about [her] pick rate when he stops by" and that she "never received any SWAG" from him. ECF No. 1 at 11. However, plaintiff also attaches a photo of a package of SWAG she received from defendant on October 20, 2019. ECF No. 4 at 63.

During the week of June 3rd, 2019, (which was the beginning of plaintiff's second week of employment), plaintiff asserts that defendant sexually harassed her by "brushing up against" plaintiff as she walked by him. ECF No. 4 at 2. Defendant also "invaded [plaintiff's] personal

3

space" and "made [her] feel extremely uncomfortable" by standing "too close" to her. *Id.*; ECF No. 1 at 9. When plaintiff backed up a few steps, she asserts that defendant looked "upset" and then "proceeded to force [himself] back into [plaintiff's] space by taking a few steps closer." Plaintiff states that she "immediately suspected" that defendant was "obsessed with her." ECF No. 4 at 2.

When plaintiff had been employed about three weeks, defendant told a group of employees that some stickers needed to be removed from some lockers. Plaintiff claims that defendant was looking directly at her with "assertive eye contact" when he made the announcement, so she felt obligated to do the task even though she had just had her nails done and defendant was aware of her new nail art. Plaintiff and another female employee worked on the sticker removal. However, plaintiff was mad that she was given this "slightly difficult task" so she "questioned" defendant about why she had to do it. Defendant responded that plaintiff should not question him and should do as she is told. After this "hostile" encounter between plaintiff and defendant, plaintiff "stopped acknowledging" defendant at work, causing defendant to become "more petty" towards her. *Id.*

After plaintiff had been employed over eight weeks, she complained to defendant's supervisor about "the issues and concerns" she had with defendant. ECF No. 4 at 3. In her follow-up email to defendant's supervisor summarizing their conversation, plaintiff describes defendant as exhibiting "odd behavior, hostile approach and inappropriate mannerisms" which are "distasteful and considered sexual harassment." *Id.* at 21. Plaintiff felt like her concerns were not taken seriously, especially since she believed it was an "emergency" situation. *Id. at 3*. Plaintiff was contacted by a human resources employee the next day to follow up on her

situation; however, this contact upset plaintiff because she felt that confidentiality had been violated. But plaintiff did tell the human resource contact that defendant "likes Trannies and [that] she is scared [defendant] may try to harm her because she is speaking out about her unwanted and unprofessional experiences at work when he is present." *Id.* The next day, plaintiff spent almost two hours on the phone making a complaint with the Amazon Ethics and Compliance department, but she says that her complaint report was lost when the phone disconnected. *Id.* at 3-4. Because plaintiff felt her complaints were not taken seriously and were handled in an unprofessional manner, she no longer trusted Amazon and would not accept or return any phone calls from multiple Amazon employees who attempted to contact her. *Id.* at 4. However, plaintiff states that she did speak with an Amazon human resources employee after their investigation into her allegations against defendant was complete. ECF No. 1 at 9. Amazon did not find a violation of their policy by defendant. *Id.*

Plaintiff describes herself as "the best" at what she does and states that her fellow employees gossip about her, complain that she works "too much," and shun her for being a "hustler." ECF No. 1 at 9-10. She details an incident where she was locked out of the system at work and could not complete her shopping order because a fellow employee complained about a "subliminal childish interaction" claiming plaintiff acted in an "unprofessional manner." *Id.* at 10. However, plaintiff cleared her name, fought for her job, and went back to work. Plaintiff does not allege that this incident involved defendant Millet. But plaintiff does allege that defendant does not "check in" with her, like he does other employees. ECF No. 1 at 11. Also, that he doesn't discuss her pick rate with her and tell her whether she needs improvement.

5

Plaintiff states that it is awkward between them and that they do not speak to each other. Plaintiff explains this by stating: "I have my reasons and I guess he has his." *Id.*

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 4, 2019. ECF No. 4 at 67-68. Plaintiff alleged discrimination based on sex and retaliation, which occurred between June 3, 2019, and July 25, 2019. *Id.* at 67. Plaintiff described her allegations of sexual harassment against defendant, including the staring at her breasts, the brushing up against her, and the closeness by which defendant stood to her. Plaintiff asserted that as result of her resistance to defendant's advances, defendant retaliated against her by "nitpicking" her work, preventing her from picking her work shifts, and acknowledging other employees' good work but not hers. *Id.* Overall, plaintiff claimed that she was discriminated against on the basis of her sex; she was sexually harassed; she was subjected to a hostile work environment for "gender non-conforming appearance and behavior, and/or for transitioning from one gender to another and/or for being a transgender individual;" and that she was retaliated against for "participating in a protected activity." *Id.* at 68. Plaintiff received a right-to-sue letter from the EEOC on October 2, 2019. *Id.* at 71; ECF No. 1-3.

Plaintiff filed many pages of attachments and multiple 'memorandum' with the Court after the initiation of this matter. *See* ECF Nos. 4, 6, 7. In one memorandum, plaintiff provides greater detail on her accusations and attaches documentation including emails, screenshots from her phone, and income information. ECF No. 4. In one email dated July 20, 2019, plaintiff thanks defendant for helping her confirm the cancellation of a shift and then she writes: "Doug. I really appreciate you :) … You're the best!!!" *Id.* at 20. In the November 19, 2019,

memorandum, plaintiff informed the Court that defendant Doug Millet had changed positions with the company and was no longer plaintiff's supervisor.  ECF No. 6.  Plaintiff also attached to the memo an email documenting an incident at work where she was accused of, and admitted to, a safety violation at work.  *Id.* at 4-5; *see also* ECF No. 4 at 53-54.  Plaintiff stated in response to defendant about the safety violation: "I can't wait to see you in court."  ECF No. 6 at 4.  In the memorandum filed December 18, 2019, plaintiff informs the Court of her "involuntary termination" from employment with Amazon.  ECF No. 7.

For relief, plaintiff requests $500,000 in damages and a "job transfer to anywhere in the United States."  ECF No. 1 at 7.  Also, plaintiff does not believe she will "receive justice unless Doug Millet is fired from Amazon."  *Id.* at 11.

## Discussion

Plaintiff brings her claim of employment discrimination under Title VII, alleging failure to promote, retaliation, and harassment "because [plaintiff] didn't give [defendant] supervisor a chance to get personal with [her] outside and inside the workplace."  ECF No. 1 at 4-5.  Plaintiff also alleges that she was subjected to a hostile work environment due to her sex and her transgender status.  ECF No. 4 at 68.  Plaintiff alleges this discrimination started in June 2019.  She filed her EEOC charge concerning these allegations in September 2019, and she filed this lawsuit on October 21, 2019.

Plaintiff's claims of employment discrimination under Title VII are subject to dismissal under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.  The only defendant named in this matter is not suable under Title VII.  However, even if plaintiff had named the correct defendant, plaintiff's claims fail because she has suffered no adverse

employment action and her allegations of hostile work environment are not severe and pervasive.

The only named defendant in plaintiff's complaint is her on-site supervisor, Doug Millet. Plaintiff cannot state a federal claim against this defendant because Title VII provides a remedy only against an employer. The Eighth Circuit Court of Appeals has "squarely held that supervisors may not be held individually liable under Title VII." *Bonomolo-Hagen v. Clay Central-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997) (citing *Spencer v. Ripley Cty. State Bank*, 123 F.3d 690, 691-92 (8th Cir. 1997)); *see also Bales v. Wal-Mart Stores Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998). As a result, plaintiff's complaint is subject to dismissal for failure to state a claim under Title VII.

Even if plaintiff had properly named her employer as the defendant in this Title VII action, her complaint would still fail to state a claim. Plaintiff alleges a failure to promote, but she describes no incident where she sought and was denied a promotion. Plaintiff alleges sex discrimination and retaliation, but she suffered no materially adverse employment action. Finally, plaintiff claims she was subjected to a hostile work environment due to her sex and status as a transgender individual, but plaintiff fails to provide sufficient factual content to state a claim for hostile work environment or to maintain a claim based on being transgender.

**A. Sex Discrimination**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an individual with respect to her "compensation, terms, conditions, or privileges of employment" because of her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of sex discrimination, plaintiff must show that she: (1) is a member of a protected class; (2) was meeting her employer's legitimate

job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class. *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citation omitted). "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Id.*

Plaintiff alleges no adverse employment action from which she suffered as a result of sex discrimination. Plaintiff describes no negative, material change in her employment during the time frame at issue. In fact, she describes the opposite. Plaintiff began her employment in May 2019 as a "seasonal" shopper under a "contingent" offer of employment. ECF Nos. 1 at 9, 4 at 6. However, in October 2019, around the same time as the filing of this matter, plaintiff was converted to a "permanent role." ECF No. 1 at 9.

Plaintiff does complain about not being able to sign-up for as many work shifts as she would like. But plaintiff admits that shift sign-ups are done on the computer on a "first come, first serve" basis, and she does not allege any sex discrimination in not being able to obtain certain shifts. *Id.* at 10. Plaintiff also complains about an incident where she lost pay when she was forced to stop shopping because a co-worker complained about her unprofessional behavior. *Id.* However, this incident had nothing to do with sex discrimination or her defendant supervisor. Plaintiff also described an incident where she was tasked with removing stickers from lockers despite her recent manicure. But, plaintiff admits that another female co-worker was doing the sticker-removal task as well. ECF No. 4 at 2. In addition, the salary and income

9

documentation submitted by plaintiff demonstrates no pattern of decreased pay over time.   ECF No. 4 at 28-52.

Although plaintiff was eventually "involuntarily terminated" from her employer, this termination occurred after the filing of the complaint in this matter, and after plaintiff was no longer being supervised by defendant Millet.  *See* ECF Nos. 6-7.   Plaintiff did not raise the issue of termination in her EEOC charge and therefore plaintiff has not exhausted her administrative remedies regarding such a claim of adverse action.   *See Onyiah v. St. Cloud State University,* 684 F.3d 711, 718 (8th Cir. 2012).

### B. Retaliation

To establish a prima facie case of retaliation, plaintiff must show that: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct.   *Jackman*, 728 F.3d at 804 (citation omitted).   Here, plaintiff alleges that defendant Millet treated her differently after she complained to Amazon management about his behavior towards her.   Plaintiff claims that defendant was more critical of her work than others, that he didn't follow up with her on how she could improve, and that he generally did not speak to her.   ECF No. 1 at 11.   Again, as discussed above, plaintiff fails to state a claim of retaliation because she does not allege any materially adverse employment action.   In fact, plaintiff was promoted to a permanent employee during the time at issue.

### C. Hostile Work Environment Based on Sexual Harassment

According to the Supreme Court, "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex," as defined

in Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). As such, a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *Id.* at 66. However, not all conduct that may be described as "harassment," affects a "term, condition, or privilege" of employment within the meaning of Title VII. *Id.* (internal citations omitted).

To state a prima facie case of hostile work environment based on sexual harassment by a supervisor, plaintiff must allege that: (1) she is a member of a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of her employment. *LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098, 1101 (8th Cir. 2005). In order for an atmosphere of sexual harassment or hostility to be actionable, "the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) (quoting *Meritor*, 477 U.S. at 67 1986) (internal quotation marks and brackets omitted).

To be considered sufficiently severe or pervasive, the conduct complained of must create an environment that a reasonable person would find hostile or abusive. *Duncan v. General Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002). To be actionable, conduct must be both subjectively and objectively offensive, as well as "extreme in nature and not merely rude or unpleasant." *Southerland v. Mo. Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009) (citations omitted). To determine whether a work environment is hostile and abusive, the Court examines the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or mere offensive utterance, and

whether it unreasonably interferes with an employee's job performance. *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010).

As this stage of initial review, plaintiff does not have to prove that a hostile work environment existed, but she does need to make sufficient factual allegations to state a claim upon which relief may be granted. Here, plaintiff alleges that she experienced the unwelcome harassing conduct of defendant staring at her breasts on one occasion, brushing up against her body on one occasion, and standing too close to her on one occasion. Plaintiff alleges that these three events occurred within the first two weeks of her employment. She makes no other allegations constituting sexual harassment or hostile work environment that occurred over the subsequent five months leading up to the filing of this case.

Based on Eighth Circuit precedents, plaintiff's allegations here are insufficient to state a claim for severe or pervasive harassment. In *McMiller v. Metro*, 738 F.3d 185 (8th Cir. 2013), the Eighth Circuit found insufficient allegations for a hostile environment claim under Title VII where plaintiff's supervisor made sexual advances on three occasions and threatened to terminate plaintiff's employment if she refused his demands. *Id.* at 186. The plaintiff in *McMiller* testified that over approximately a five-month period her supervisor kissed her face on two occasions, placed his arms around her or attempted to do so three times, and requested that she remove an ingrown hair from an area near his chin. *Id.* at 188. On one of these occasions, plaintiff's supervisor locked the two of them in his office and when plaintiff tried to leave the office, he pulled her hand from the door, turned her around, put his arms on her shoulder and neck, and kissed her face and forehead. *Id.* at 187. The Eighth Circuit found these allegations of sexual harassment not so severe or pervasive as to alter the terms and conditions of

12

employment. *Id.* at 189. *See also Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (holding insufficient evidence of hostile environment claim where a supervisor rubbed employee's back and shoulders, called her "baby doll," accused her of not wanting to be "one of [his] girls," suggested "that she should be in bed with him," and insinuated that she would be promoted if she got along with him); *LeGrand,* 394 F.3d at 1100-03 (finding no actionable Title VII hostile environment claim where there were three incidents over a nine-month period that included the harasser asking plaintiff to watch pornographic movies and masturbate together, suggesting plaintiff would be promoted if plaintiff helped the harasser to orgasm, kissing the plaintiff on the mouth, grabbing the plaintiff's buttocks, reaching for the plaintiff's genitals, brushing plaintiff's crotch with back of hand, and gripping the plaintiff's thigh).

Also, in a case that the Eighth Circuit called "borderline" for sufficient to state a hostile environment claim, the allegations of harassment were of a much greater frequency and duration than the allegations at issue here. *See Rorie v. United Parcel Service, Inc.*, 151 F.3d 757 (8th Cir. 1998). In *Rorie*, the plaintiff testified that her supervisor asked her to go swimming with him; asked her about a coworker's penis size; told her that she looked better than other women in her work uniform; "often" told her that she smelled good "throughout" three years of employment; patted her on the back; brushed up against her; and was "constantly 'coming on' to her." *Id.* at 761.

The Court finds that plaintiff's allegations are not sufficient to state a claim of "severe or pervasive" conduct as required for a hostile environment claim under Title VII, based on Eighth Circuit precedent.

### D. Transgender Discrimination and/or Hostile Work Environment

Plaintiff states in her EEOC charge that she believes she was subjected "to a hostile work environment for gender non-conforming appearance and behavior, and/or for transitioning from one gender to another and/or for being a transgender individual." ECF No. 4 at 68. First, the Court notes that the U.S. Supreme Court has recently granted a writ of certiorari to address the question of "[w]hether Title VII prohibits discrimination against transgender people based on (1) their status as transgender [and/or] (2) sex stereotyping under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)." *R.G. & G.R. Harris Funeral Homes, Inc. v. E.E.O.C.*, 139 S. Ct. 1599 (2019). However, the Eighth Circuit has acknowledged Title VII claims of discrimination based on being transgender. *See Tovar v. Essentia Health*, 857 F.3d 771, 775 (8th Cir. 2017) ("we assume for purposes of this appeal that the prohibition on sex based discrimination under Title VII … encompasses protection for transgender individuals.") (citing *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 702 (8th Cir. 2012)). So for purposes of this initial review, the Court will assume such a claim may be brought under Title VII.

However, to the extent that plaintiff seeks to state a discrimination or hostile work environment claim based on her transgender status under Title VII, this claim fails to state a claim for lack of factual support. Plaintiff provides absolutely no factual allegations of discrimination or harassment based on being transgender. Plaintiff does not describe any conversations she had with anyone about her appearance or gender at work. Plaintiff does not allege a single occurrence or consequence that resulted from being a transgender individual. Plaintiff does not allege a single factual situation in her complaint that mentions or is relevant to her transgender status. Plaintiff must plead more than legal conclusions; plaintiff must plead

14

factual content such that the Court can draw a reasonable inference of disparate treatment based on transgender status in order to state a claim. *See Iqbal*, 556 U.S. at 678. Plaintiff has not done so here.

In conclusion, the Court will dismiss without prejudice plaintiff's Title VII employment discrimination complaint under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted. The only named defendant is not suable under Title VII and plaintiff fails to allege sufficient facts to state a claim for sex or transgender discrimination, retaliation, or hostile work environment. Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**. *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendant Doug Charles Millet because the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendant Doug Charles Millet are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 14th day of February, 2020.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE